UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| A.A., *A MINOR, BY AND THROUGH HER NATURAL GUARDIAN, DANIELLE ROWE*; and DANIELLE ROWE, *ON HER OWN BEHALF*;<br>    Plaintiffs,<br><br>    v.<br><br>CITY OF LANCASTER;<br>DETECTIVE AUSTIN KRAUSE;<br>EAST HEMPFIELD TOWNSHIP;<br>DETECTIVE RICHARD GAUCK;<br>COUNTY OF LANCASTER;<br>CHIEF COUNTY DETECTIVE KENT SWITZER;<br>OFFICER(S) JOHN DOE(S); and<br>CHIEF OF POLICE JOHN T. BEY;<br>    Defendants. | No. 5:22-cv-01621 |

_____

**O P I N I O N**
**City Defendants' Motion to Dismiss, ECF No. 18 – Granted in part**
**County Defendants' Motion to Dismiss, ECF No. 20 – Granted in part**
**Township Defendants' Motion for Judgment on the Pleadings, ECF No. 25 – Granted in part**

**Joseph F. Leeson, Jr.**                                                                                  **December 13, 2022**
**United States District Judge**

## I.    INTRODUCTION

Plaintiff Danielle Rowe initiated the above-captioned action on her own behalf and on behalf of her minor daughter AA for alleged civil rights violations that arose when police executed a search warrant at Rowe's residence. Defendants City of Lancaster, Detective Austin Krause, and Chief of Police John T. Bey ("City Defendants") and Defendants County of Lancaster, Detective Richard Gauck, and Chief County Detective Kent Switzer ("County Defendants") each filed a Motion to Dismiss. Chief of Police Stephen A. Skiles and Defendant East Hempfield Township ("Township Defendants") filed a Motion for Judgment on the Pleadings. For the reasons set forth

below, the motions are granted in part. Counts I, II, and III against Krause and Gauck are dismissed without prejudice. Counts VI and VII against these defendants are sufficient to state a claim. The allegations against the Township, the City, the County, as well as the supervisory liability claims against Skiles, Bey, and Switzer, in Counts IV and V are dismissed without prejudice.

## II.    BACKGROUND

On April 27, 2022, Rowe filed a Complaint on behalf of herself and her minor daughter AA pursuant to 42 U.S.C. § 1983.[1] Approximately two months later, prior to any response by Defendants, Rowe filed an Amended Complaint. Am. Compl., ECF No. 16. The Amended Complaint names as Defendants: the City of Lancaster; Austin Krause, a detective employed by the City; John T. Bey, the Chief of Police of the City since November 2020; East Hempfield Township; Richard Gauck, a detective employed by the Township; Lancaster County; and Kent Switzer, Chief County Detective since 2016. *Id.* ¶¶ 2-6, 8-10. The body of the Amended Complaint names as a Defendant Stephen A. Skiles, the Township's Chief of Police since 2010, but Skiles is not listed in the caption. *Id.* ¶ 11. Rowe alleges that at the time of the events giving rise to the claims, Krause and Gauck were acting on behalf of the County as members of the Lancaster County Drug Task Force, that Krause was also acting on behalf of the City, and that Gauck was also acting on behalf of the Township. *Id.* ¶ 20.

According to the Amended Complaint, on or around May 6, 2021, Gauck and Krause executed a search warrant at Rowe's residence, which was issued due to the suspected criminal activity of an individual in the residence. *Id.* ¶¶ 19, 22. That individual was neither Rowe, nor her daughter AA. *Id.* ¶¶ 21-22. At no time were either Rowe or AA suspected and/or accused of any

---

[1]    "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

criminal wrongdoing.  *Id.* ¶ 23.  When executing the search warrant, Gauck and Krause, who were informed AA was fifteen-years old, instructed AA to exit the residence with her hands behind her head.  *Id.* ¶¶ 27, 32.  AA was wearing only her undergarments.  *Id.* ¶ 28.  AA had asked the Detectives to allow her to clothe herself or have some garment draped around her before being escorted out of the residence, which they denied.  *Id.* ¶¶ 29-30.  Gauck and Krause similarly denied the request of Rowe, who was in only her undergarments, to clothe herself prior to being led outside.  *Id.* ¶¶ 33-34.  The Detectives zip-tied the hands of AA and Rowe behind their backs prior to ordering them out of the residence.  *Id.* ¶ 35.  While AA was zip-tied and unclothed, one of the Detectives thrusted his pelvis into her back.  *Id.* ¶ 37.  Multiple onlookers saw AA and Rowe wearing only undergarments and observed AA seated outside with her legs spread, menstrual pad and part of her vagina exposed.  *Id.* ¶ 39.  It is alleged that Gauck and Krause caused Rowe and AA to be exposed to the neighborhood and caused AA to be seated outside with her legs spread, with menstrual pad and part of her vagina exposed.  *Id.* ¶ 38.

The Amended Complaint alleges that the City, Bey, the Township, Skiles, the County, and Switzer "maintained a policy, practice and/or custom that authorized and/or encouraged" Gauck and Krause to violate the rights of non-criminal suspects present during the execution of residential search warrants, such as Rowe and AA, by forcing them to appear publicly in their undergarments and failing to cover them.  *Id.* ¶ 64.  Rowe alleges that Defendants also "maintained a policy, practice and/or custom that authorized and/or encouraged" Gauck and Krause to violate the rights of AA by assaulting her.  *Id.* ¶ 65.  According to the Amended Complaint, Bey, as Chief of Police, is responsible for promulgating and enforcing all policies, customs, and practices of the City's police department; Chief County Detective Switzer is responsible for promulgating and enforcing all policies, customs, and practices of the Lancaster County Drug Task Force; and as Chief of Police, Skiles is responsible for promulgating and enforcing all policies, customs, and practices of the

Township's police department. *Id.* ¶¶ 4, 7, 10. Rowe further alleges that the City, Bey, the Township, Skiles, the County, and Switzer failed to properly train and supervise Gauck and Krause in the appropriate manner of executing a residential search warrant where non-criminal suspects are present and not appropriately clothed. *Id.* ¶ 60.

The Amended Complaint asserts the following counts: (I) substantive due process against Krause and Gauck; (II) state created danger against Krause and Gauck; (III) as to AA only, excessive force against Krause and Gauck; (IV) failure to train against the City, Bey, the Township, Skiles, the County, and Switzer; (V) unconstitutional custom, practice, and/or policy (*Monell*) against the City, Bey, the Township, Skiles, the County, and Switzer; (VI) as to AA only, battery against Krause and Gauck; and (VII) unreasonable search and seizure against Krause and Gauck.

The City Defendants and County Defendants have each filed a Motion to Dismiss. *See* City Mot., ECF No. 18; County Mot., ECF No. 20. The Township filed an Answer, specifically denying that Gauck executed a search warrant at Rowe's residence or had any other involvement in the events that allegedly occurred during the execution thereof. *See* Answer ¶¶ 19-38, ECF No. 22. The Answer specifically denies that Gauck was acting on behalf of East Hempfield Township at the time of the alleged events and alleges, instead, that Gauck was a member of the Lancaster County Drug Task Force and subject to its command and policies, practices, and customs. *Id.* ¶ 20. Attached to the Answer is the signed Memorandum of Understanding ("MOU") between the District Attorney's Office, the East Hempfield Township Police Department, and Gauck regarding his assignment to the Lancaster County Drug Task Force. *Id.* at Ex. A. The Township and Skiles filed a Motion for Judgment on the Pleadings.[2] Twp Mot., ECF No. 25. All motions are fully

---

[2] The Township Defendants argue that Rowe has not alleged any facts suggesting Skiles participated in the alleged constitutional violations or had knowledge of and acquiesced in the allegedly violative conduct. They further contend that the MOU shows Gauck was assigned to the

briefed. *See* Resp City Mot., ECF No. 21; Resp. County Mot., ECF No. 23; Resp. Twp Mot., ECF No. 26; Twp Reply, ECF No. 27.

### III. LEGAL STANDARDS

#### A. Motion to Dismiss – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted). The defendant bears the burden of proving that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v.*

---

County's task force and under the County's supervision and training, negating any claim against the Township.

*United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

      **B.**      **Motion for Judgment on the Pleadings – Review of Applicable Law**

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "In deciding a motion for judgment on the pleadings under Rule 12(c), the Court considers the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, matters of public record, and indisputably authentic documents attached to the motion—provided the claims are based on these documents." *Doe v. Archdiocese of Phila.*, No. 20-3024, 2021 U.S. Dist. LEXIS 38426, at *6-7 (E.D. Pa. Mar. 2, 2021). *See also Vacanti v. Apothaker & Assocs., P.C.*, No. 09-5827, 2010 U.S. Dist. LEXIS 120109, at *6 (E.D. Pa. Nov. 12, 2010) (explaining that the notable difference between the standard under 12(b)(6) and 12(c) is "that the court in a motion on the pleadings reviews not only the complaint but also the answer and written instruments attached to the pleadings" (internal quotations omitted)). "Judgment will not be granted unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law. [The court] must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005) (internal citations omitted).

      **C.**      **Substantive Due Process - Review of Applicable Law**

"To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). "[W]here another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the

6
121222

more generalized notion of 'substantive due process.'" *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (quoting *Graham* v. *Connor*, 490 U.S. 386, 395 (1989)).

### D. State-Created Danger – Review of Applicable Law

The Due Process Clause of the Fourteenth Amendment does not impose an affirmative duty on the state to protect its citizens from harms caused by private actors. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). An exception to this rule is known as the state-created danger doctrine. *See Kneipp by Cusack v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996). To assert a state-created danger claim under the Fourteenth Amendment Due Process Clause, a plaintiff must plead:

> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cty.*, 443 F.3d 276, 281-82 (3d Cir. 2006) (internal quotations omitted). The more-specific-provision rule mentioned in relation to substantive due process claims also applies to claims brought under the state-created-danger doctrine. *See Wheeler v. City of Phila.*, 367 F. Supp. 2d 737, 747 (E.D. Pa. 2005) (explaining why *Graham* applies to claims under the state-created-danger theory).

### E. Fourth Amendment Excessive Force - Review of Applicable Law

"To state a claim for excessive force under the Fourth Amendment, [the plaintiff] must show that a 'seizure' occurred and that it was unreasonable." *Phong Duong v. Telford Borough*, 186 Fed. Appx. 214, 216 (3d Cir. 2006) (internal quotations omitted). "In evaluating whether a plaintiff's rights were violated by an arresting officer's use of force, a court must determine whether the

officer's actions in gaining custody of the plaintiff were 'objectively reasonable.'" *Woods v. Grant*, 381 Fed. Appx. 144, 146 (3d Cir. 2010) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007); *Graham*, 490 U.S. at 397).

### F. Fourth Amendment Search and Seizure - Review of Applicable Law

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989); *Ashton v. City of Uniontown*, 459 Fed. App'x 185, 189 (3d Cir. 2012) (stating that a "seizure occurs whenever a government actor terminates an individual's ability to move freely.").

### G. Pennsylvania Battery – Review of Applicable Law

Under Pennsylvania law, "battery is defined as an intentional harmful or offensive contact with the person of another." *C.C.H. v. Phila. Phillies, Inc.*, 940 A.2d 336, 340 n.4 (Pa. 2008) (internal quotations omitted). The fact that contact occurs without consent is sufficient to establish that it is 'offensive,' and '[n]o intent to harm the [plaintiff] need be established.'" *Nace v. Pennridge Sch. Dist.*, 185 F. Supp. 3d 564, 584 (E.D. Pa. 2016) (quoting *Cooper ex rel. Cooper v. Lankenau Hosp.*, 51 A.3d 183, 191 (Pa. 2012)). While "police officers are privileged to batter others in the course of their duties; '[a] police officer may be held liable for assault and battery [if] a jury determines that the force used in making an arrest is unnecessary or excessive.'" *Lopez v. City of Lancaster*, No. 19-5104-KSM, 2021 U.S. Dist. LEXIS 148599, at *23 (E.D. Pa. Aug. 9, 2021) (quoting *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994)).

### H. Municipal and Supervisory Liability - Review of Applicable Law

"[A] municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*

*v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "A plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy[3] or custom[4]." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell*, 436 U.S. at 691). The policy or custom must be unconstitutional itself or be "the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 400 (1997); *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991). The plaintiff must show either: (1) an employee acted pursuant to a formal policy or a standard operating procedure; (2) the alleged violations were taken by a person with policy-making authority; or (3) an official with such authority has ratified the unconstitutional actions of a subordinate. *See McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005); *Phillis v. Harrisburg Sch. Dist.*, 430 F. App'x 118, 123 n.7 (3d Cir. 2011).

Failing to train and/or supervise municipal employees can also be a source of liability, but only where "the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Thomas*, 749 F.3d at 222. The plaintiff must show that "the deficiency in training actually caused the [injury]." *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). A three-part test has been formulated to determine whether a municipality's failure to train or supervise amounts to deliberate indifference. *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999). "[I]t must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees

---

[3]   "A municipal policy, for purposes of Section 1983, is a statement, ordinance, regulation, or decision officially adopted and promulgated by a government body's officers." *Torres v. City of Allentown*, No. 07-1934, 2008 U.S. Dist. LEXIS 50522, at *10-11 (E.D. Pa. June 30, 2008) (citing *Monell*, 436 U.S. at 690).

[4]   A custom, although not authorized by written law, has the force of law because it is such a permanent and well-settled practice. *Monell*, 436 U.S. at 690. A "custom may be established by proving knowledge of, and acquiescence to, a practice." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007).

mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id*.

"[I]n limited circumstances [] supervisors may be held liable for the unlawful conduct of subordinates." *Diorio v. Harry*, No. 21-1416, 2022 U.S. App. LEXIS 21130, at *17-18 (3d Cir. Aug. 1, 2022). There are two theories of liability under which a supervisory defendant may be personally liable: (1) the defendant-supervisor participated in violating the plaintiff's rights, directed others to violate them, or had knowledge of and acquiesced in his subordinates' violations; and (2) the defendant, in his role as policymaker, acted with deliberate indifference in establishing and maintaining a policy, practice, or custom which directly caused the plaintiff's constitutional harm. *See A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Under the second theory, the plaintiff "must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the [plaintiff's] risk of injury and must establish a link between the supervisor, the act, and the injury." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410.

## IV.   ANALYSIS

### A.   Substantive due process claims against Krause and Gauck are dismissed.

Krause and Gauck argue that the substantive due process claims should be dismissed because they are more appropriately brought under the Fourth Amendment. Rowe responds that she has asserted separate privacy claims that are not covered by the Fourth Amendment.[5]

---

[5] Rowe also suggests that dismissal would only be warranted if her Fourth Amendment claims are not dismissed, but whether the alleged conduct is covered by the Fourth Amendment is a separate inquiry from whether she has sufficiently pled a Fourth Amendment claim.

"Challenges to the reasonableness of a search [or seizure] by government agents clearly fall under the Fourth Amendment, and not the Fourteenth." *Conn*, 526 U.S. at 293. Further, "*all* claims that law enforcement officers have used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at 395.

In the substantive due process count here, Rowe alleges that she and AA were deprived of the right to privacy / bodily autonomy by "being forced to be exposed in only their undergarments without any exigent or other justification." Am. Compl. ¶ 43. These allegations are covered by the Fourth Amendment because Krause and Gauck allegedly forced Rowe and AA to be exposed during the course of a seizure. *See L.A. Cty. v. Rettele*, 550 U.S. 609, 609-10 (2007) (analyzing the plaintiffs' complaint that sheriff's deputies, while executing a valid search warrant for suspects that had unbeknownst to them moved out of the residence months earlier, ordered the plaintiffs, who had been sleeping unclothed, out of bed and required them to stand for a few minutes before allowing them to dress, under the Fourth Amendment); *Quick v. Hall*, No. 2:18-cv-1547, 2020 U.S. Dist. LEXIS 42097, at *29 (S.D. Ohio Mar. 11, 2020) (determining that a plaintiff's claim of forced nudity in the context of a law enforcement seizure is analyzed under the Fourth Amendment, not the Due Process Clause). Although Rowe cites to a decision by the Third Circuit Court of Appeals in which the court held that a person has a "constitutionally protected privacy interest in his or her partially clothed body," which may be cognizable under the Fourteenth Amendment, the court determined that the conduct alleged to have violated the plaintiff's right to privacy "was not a search or seizure under the Fourth Amendment." *See Doe v. Luzerne Cty.*, 660 F.3d 169, 176, 179 (3d Cir. 2011). Here, however, Rowe alleges that Krause and Gauck zip-tied the hands of AA and Rowe behind their backs prior to ordering them out of the residence unclothed, *see* Am. Compl. 35,

37, which constitutes a seizure. Because the Fourth Amendment covers the alleged violations, Count I is dismissed without prejudice.[6]

### B. State-created danger claims against Krause and Gauck are dismissed.

Krause asserts that because the state-created-danger claim stems from alleged conduct during the course of a seizure, it should be dismissed in lieu of the more specific Fourth Amendment. Gauck also moves to dismiss the claim and further argues that the Amended Complaint does not plead any affirmative acts by him that shocked the conscience.

The conduct comprising the state-created danger claim relates to the Detectives allegedly forcing Rowe and AA outside during the execution of the search warrant and allegedly compelling them to appear in public in their undergarments. *See* Am. Compl. ¶¶ 49-51. For the reasons set forth in the previous section, these allegations are covered by the Fourth Amendment. *See Brice v. City of York*, 528 F. Supp. 2d 504, 515-16 (M.D. Pa. 2007) (dismissing the state-created-danger claim because it was predicated on police conduct during the course of an arrest); *Wheeler*, 367 F. Supp. 2d at 747 (same). Count III is dismissed without prejudice.[7]

---

[6] Although this Court questions whether Rowe can amend to state a substantive due process claim that is not covered by the Fourth Amendment, it cannot conclude at this stage that an amendment would be futile. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile"). Although Rowe previously filed an amended complaint, it was filed before any Defendant moved to dismiss or this Court issued an opinion identifying the deficiencies in the pleadings, and there is nothing to suggest that Defendants will be prejudiced by granting Rowe an opportunity to amend. *See Cornell & Co. v. OSHRC*, 573 F.2d 820, 823 (3d Cir. 1978) ("It is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment." (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971))).

[7] Because the Fourth Amendment provides constitutional protection to the alleged conduct and Count III is dismissed, there is no need to address Gauck's arguments regarding the merits.

C. **Excessive force claims against Krause and Gauck may proceed if amended.**

Krause moves to dismiss the excessive force claim because Rowe does not specify whether Krause or Gauck is alleged to have zip-tied AA's hands, to have ordered AA outside unclothed, and/or to have thrusted his pelvis in her back. He suggests, therefore, that the Amended Complaint fails to show Krause's personal involvement in the alleged violations. Gauck also moves to dismiss, arguing that there are no allegations he used force to detain AA, that the zip-ties were too tight, or any specific allegations of what force was used aside from AA being detained. *See* Gauck Mot. 9 (citing *Graham*, 490 U.S. 386 (holding that "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it")).

The Amended Complaint does not clearly identify the conduct Rowe alleges constituted excessive force against AA. Rather, this count makes conclusory statements that Gauck and Krause "used more than the amount of force necessary under the circumstances," subjecting AA to "excessive force while being detained." *See* Am. Compl. ¶¶ 55-58. This count does however incorporate earlier paragraphs that allege Detectives Krause and Gauck zip-tied AA's hands behind her back before ordering her out of the residence and that one of them thrusted his pelvis into her back. *Id.* ¶¶ 35-37. In response to Gauck's Motion to Dismiss, Rowe explains that the excessive force claim stems from the sexual assault, not the detention itself. *See* Resp. County Mot. 14 (citing *White v. Massini*, No. 22-CV-1230, 2022 U.S. Dist. LEXIS 68094, at *5 (E.D. Pa. Apr. 13, 2022) (explaining that a "sexual assault claim is analyzed in the same manner as an excessive force claim"); *Ricks v. Shover*, 891 F.3d 468, 473-74 (3d Cir. 2018)).

At this early stage of the proceedings, Krause's argument that all claims against him should be dismissed for lack of factual specificity and personal involvement is unpersuasive. The Amended Complaint alleges that both Krause and Gauck were the officers executing the search

warrant, that both detectives instructed AA to exit the residence with her hands behind her head, that AA asked both detectives for permission to put on clothes, which they denied, that both detectives zip-tied her hands, and that she was in the custody of both detectives. *See* Am. Compl. ¶¶ 27-36. Although only one of the detectives is alleged to have thrust his pelvis into AA's back, *id.* ¶ 37, the allegations are generally sufficient to put Krause and Gauck on notice of the claims.[8] *See* Fed. R. Civ. P. 8. Considering too Rowe's clarification that the excessive force claim is based on allegations one of the Detectives thrust his pelvis into AA's back after she had been seized, Rowe will be permitted to amend to make this clarification and then conduct discovery to determine the identification of this detective. *See Kintzel v. Kleeman*, 965 F. Supp. 2d 601, 610 (M.D. Pa. 2013) (refusing to dismiss the Fourth Amendment excessive force claim that the state trooper sexually assaulted the plaintiff during the course of a seizure). If Rowe is unable to identify the allegedly responsible detective, judgment may be appropriate at a later date. *See Glass v. City of Phila.*, 455 F. Supp. 2d 302, 366-67 (E.D. Pa. 2006) (holding that after a non-jury trial even if the court were to find that the unidentified officer used excessive force, "there can be no § 1983 liability against an unidentified individual officer"). Count III is dismissed without prejudice for Rowe to make a minor clarification amendment that will be sufficient to state a claim.

        **D.**       **Battery claim against Detectives Krause and Gauck is sufficiently pled.**

Detective Krause and Gauck argue that because Rowe has failed to specifically allege who sexually assaulted AA, the claim must be dismissed. Krause contends that the allegations are insufficient to provide notice of the claim and fail for lack of personal involvement, while Gauck asserts that battery requires proof the defendant acted with intent.

---

[8]     For these reasons, Krause's suggestion that all claims against him should be dismissed for lack of factual specificity and personal involvement is unpersuasive. Each claim will be addressed individually.

For the reasons set forth above regarding the excessive force claim, the Amended Complaint sufficiently alleges the personal involvement of Krause and Gauck to put them on notice of the claim: that a battery was committed on AA when one of the detectives thrust his pelvis into her back.  Further, because the alleged conduct was without AA's consent, it is sufficiently offensive that intent to harm need not be established.  *See Nace*, 185 F. Supp. 3d at 584 (reasoning that the age of the victim may make consent impossible under the law); *Kobrick v. Stevens*, No. 3:13-2865, 2014 U.S. Dist. LEXIS 137554, at *13-14 (M.D. Pa. Sep. 30, 2014) (rejecting the defendant's argument that the battery claim should be dismissed because the plaintiff failed to allege the defendant acted with the intent to cause a harmful or offensive contact because the sexual relations the defendant had with the plaintiff could be considered offensive contact).  The motion to dismiss Count VI is denied.

      **E.**    **Claim for unreasonable search and seizure against Detectives Krause and Gauck is sufficiently pled.**

Gauck argues the Amended Complaint does not allege that the Detectives' actions, "aside from not letting [Rowe and AA] put on pants" was unreasonable and cites to caselaw supporting an officer's ability to take steps during the execution of a search warrant to secure the premises.  However, it is the allegation that Rowe and AA were not permitted to put clothes on before being forced outside, not simply that they were detained during the execution of the warrant, that is the basis of the Amended Complaint.  The reasonableness of this conduct will not be addressed at this early stage of the proceedings.  Additionally, for the reasons set forth above regarding the excessive force and battery claims, the Amended Complaint sufficiently alleges the personal involvement of Krause and Gauck to satisfy Rule 8.  The requests to dismiss Count VII are denied.

### F.     All claims against Bey, Skiles,[9] and Switzer are dismissed.

Initially, it is not clear from the Amended Complaint whether Bey, Skiles, and Switzer are being sued in their individual and/or official capacities.  The County Defendants move to dismiss any claim against Switzer in his official capacity as the Chief Detective of Lancaster County as duplicative of the *Monell* claim against the County.  *See* County Mot. 16-17.  Rowe responds that because the County Defendants are jointly and severally liable the claims are not duplicative, but apparently does not recognize the distinction between individual and official capacity claims.  *See* Resp. County Mot. 19 n.5.  However, in response to a similar argument by the Township Defendants regarding Skiles, *see* Twp Mot. 5, Rowe responds that Skiles is sued in his personal capacity only, so the claim against him is not duplicative of that against the Township, *see* Resp. Twp Mot. 6-8 (requesting leave to amend to make this clarification).  Because "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent,'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell*, 436 U.S. at 690, n.55), any official capacity claims against Bey, Skiles, and Switzer are duplicative of the claims against their respective employers/municipalities.  All official capacity claims against these Defendants are therefore dismissed with prejudice.

As to the individual capacity claims, there are no factual allegations in the Amended Complaint that Bey, Skiles, and/or Switzer had any personal involvement with, participated in, or was aware of and acquiesced in the events involving Rowe and AA.  Rowe's conclusory allegation that "Defendants maintained a policy, practice and/or custom that authorized and/or encouraged" Detectives Gauck and Krause to violate the rights of Rowe and AA, *see* Am. Compl. ¶¶ 64-65

---

[9]     Because Skiles is named as a Defendant in the body of the Amended Complaint and an amendment would easily correct Rowe's failure to include Skiles in the caption, this Court, for purposes of this Opinion, will treat Skiles as if he were properly named in the caption and permit an amendment in this respect.

(emphasis added), is wholly conclusory. Aside from grouping these Defendants in the conclusory allegation just mentioned, the only other reference to Bey, Skiles, and/or Switzer in the Amended Complaint is when they are identified as parties and in the conclusory allegation that they, again grouped, "failed to properly train and supervise" Detectives Gauck and Krause in the appropriate manner of executing warrants. *See* Am. Compl. ¶¶ 4, 7, 8, 60-61, 64-65. The Amended Complaint, which contains no allegations showing, for example, that the alleged violations had occurred previously, is devoid of any non-conclusory allegations that any of these Defendants were deliberately indifferent in either establishing an unconstitutional policy or in failing to train Gauck and Krause. *See Rulli v. City of Pittsburgh*, No. 2:20-cv-965, 2021 U.S. Dist. LEXIS 55919, at *20 (W.D. Pa. Mar. 23, 2021) (dismissing the supervisory liability claim against the mayor because the conclusory allegations that he "ordered, authorized and/or acquiesced in the violation of Plaintiffs' rights" was merely a recital of the elements of a supervisory liability theory that was not entitled to the assumption of truth); *Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 431 (E.D. Pa. 2020) (dismissing the failure-to-train claims against the police supervisors because there were no allegations of a pattern of constitutional violations or sufficient facts to establish their deliberate indifference or personal involvement, only conclusory allegations). Consequently, the individual-capacity[10] claims against Bey,[11] Skiles, and Switzer are dismissed without prejudice.[12]

      **G.**    **All claims against the City, Township, and County are dismissed.**

For the reasons just explained, Rowe's conclusory allegations are insufficient to show that Gauck and Krause were acting pursuant to a policy or custom or that the municipalities were

---

[10] Rowe's request for leave to amend to clarify that her claim against Skiles, and against any other Defendant, is made in his individual capacity is granted.

[11] Because Bey is being dismissed as insufficient to state a claim, this Court will not address Bey's qualified immunity argument.

[12] Because the allegations are so vague, this Court cannot determine whether an amendment would be futile and will therefore allow Rowe to amend her pleadings.

deliberately indifferent in failing to train either. *See Babner v. Cumberland Cty.*, No. 3:20-cv-02465, 2022 U.S. Dist. LEXIS 43917, at *12-13 (M.D. Pa. Mar. 11, 2022) (dismissing the *Monell* claims based on conclusory allegations that the County had a policy of disregarding inmates' medical concerns); *Edwards v. Lindenwold Police Dep't*, No. 21-13076, 2022 U.S. Dist. LEXIS 37481, at *17-18 (D.N.J. Mar. 3, 2022) (dismissing the *Monell* claim because the plaintiff provided "only conclusory allegations as to the existence of a policy, practice, and custom"). Thus, all claims against the City, Township,[13] and County are dismissed without prejudice.[14]

## V. CONCLUSION

The due process claims in Counts I and II are dismissed without prejudice because they are based on alleged misconduct by Krause and Gauck that is covered by the Fourth Amendment. The Fourth Amendment claim for excessive force against Krause and Gauck, when coupled with Rowe's response to the motions to dismiss clarifying the basis of the claim, is sufficient to state a claim. However, because this clarification is not in the pleadings, Count III is dismissed without prejudice to make this amendment. The allegations are sufficient to state a claim for battery and for an unreasonable search and seizure against Krause and Gauck; consequently, the requests to dismiss Counts VI and VII are denied.

The allegations against the Township, the City, the County, as well as the supervisory liability claims against Skiles, Bey, and Switzer, are wholly conclusory and insufficient to show that an unconstitutional policy or practice was the cause of the alleged injuries to Rowe and AA or that

---

[13] The Township also argues that judgment should be entered in its favor because Gauck was assigned to the Lancaster County Drug Task Force at the time of the alleged violations, but there are material issues of fact as to whether Gauck was under the control of the Township and/or the County. Specifically, the MOU relieved Gauck "of all other agency duties *unless* agreed upon by the District Attorney's Office." MOU at 1 (emphasis added). Accepting as true Rowe's allegations that Gauck was acting on behalf of both the County and the Township, this Court cannot conclude there was no other agreement pertaining to Gauck's assigned duties.

[14] *See* footnote 12, *supra*.

these Defendants acted with deliberate indifference.  Counts IV and V are therefore dismissed without prejudice.

  A separate order follows.


              BY THE COURT:


              */s/ Joseph F. Leeson, Jr.*_____
              JOSEPH F. LEESON, JR.
              United States District Judge